# EXHIBIT A

## SETTLEMENT AGREEMENT

This settlement agreement dated June 8, 2015, which, together with the Exhibits hereto, is referred to as the "Settlement Agreement," is between City of Pittsburgh ("City"), by and through its attorneys, and the Class Representatives, on behalf of the Class, by and through Class Counsel, in the class action of *Foster v. City of Pittsburgh*, No. 2:12-cv-01207 (W.D.Pa., filed Aug. 23, 2012) ("This Action").

The Class Representatives filed This Action as a class action challenging City's hiring process for Entry-Level Police Officers. The Class Representatives alleged in their Complaint that City's hiring process operated as a pattern or practice of systemic disparate treatment with respect to African-American applicants, and had an Adverse Impact on those applicants. The Class Representatives further alleged that the City lacked any legitimate business justification for the challenged hiring practices, and that there were suitable alternative selection procedures that have been demonstrated to have a lesser Adverse Impact.

## A.   Definitions

1.   **Adverse Impact.** The term "Adverse Impact" shall have the meaning set forth in 29 C.F.R. § 1607.4(D).

2.   **Alleged Discriminatory Practices**. The term "Alleged Discriminatory Practices" shall mean any Selection Device, individually or in combination, and/or the Selection Process as a whole, that allegedly resulted in the disparate treatment of, or Adverse Impact on, African-American applicants for the position of Entry-Level Police Officer, as the terms are used in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., as amended ("Title VII"), as interpreted by the Courts and/or under guidance issued by the EEOC.

3.   **Attorneys' Fees, Costs and Expenses.** The term "Attorneys' Fees, Costs and Expenses" shall mean the amount awarded by the Court to Class Counsel as reimbursement for costs and expenses advanced by Class Counsel plus the amount awarded by the Court as Attorneys' Fees. Class Counsel may not ask the Court to award in excess of $600,000 unless (a) the City contests Class Counsel's request for Attorneys' Fees on terms set forth in Section I.1 hereof; or (b) the Court awards additional fees in accordance with Section E of this Settlement Agreement.

4.   **CAFA Notice.** The term "CAFA Notice" shall mean notice of this proposed Settlement to the appropriate federal and state officials, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

5.   **Case Contribution Award.** The term "Case Contribution Award" shall mean any monetary amount awarded by the Court in recognition of the Class Representatives' assistance in the prosecution of This Action. Class Counsel shall ask the Court for an amount not to exceed $20,000.00 for each Class Representative, and City agrees not to oppose this request.

6.   **Class Counsel.** The term "Class Counsel" shall mean Witold J. Walczak, Sara J. Rose, and the American Civil Liberties Union of Pennsylvania ("ACLU"), 313 Atwood Street,

1

Pittsburgh, PA 15213; and Edward J. Feinstein, Ellen M. Doyle, Pamina Ewing, and Feinstein Doyle Payne & Kravec, LLC ("FDPK"), 429 Forbes Avenue, Allegheny Building, 17th Floor Pittsburgh, PA 15219.

7.      **Class Counsel Working Group.**   The term "Class Counsel Working Group" shall mean no more than two attorneys at any one time, to be designated by Class Counsel. Class Counsel may change the members of the Class Counsel Working Group at any time.

8.      **Class List.** The term "Class List" shall mean the list prepared by City that identifies all Class Members

9.      **Class Notice**. The term "Class Notice" shall mean the notice, identical in all material respects to that attached hereto as Exhibit --, that City shall mail by United States first class mail to the last known address of each Class Member as shown in City's records.

10.      **Class or Class Members**.   The term "Class" or "Class Members" shall mean:

> All African-Americans who (1) applied for the position of Entry-Level Police Officer with City of Pittsburgh; (2) took a written police officer examination offered by City in any year between and including 2008 and 2014; (3) did not decline a conditional offer of employment from City; and (4) were not given a final offer of employment as a police officer recruit with City in that application process.

11.      **Class Order**.   The term "Class Order" shall mean a final order entered by the Court certifying This Action as a class action, which is no longer subject to appeal or review.

12.      **Class Representatives**.   The term "Class Representatives" shall mean Plaintiffs James M. Foster, Mike J. Sharp, Timothy Christian, Tariq Jamal-Francis, and Darrick Payton, on behalf of themselves and the members of the Class, by and through Class Counsel.

13.      **Complaint.**   The term "Complaint" shall mean the First Amended Complaint, filed April 15, 2013.

14.      **Court**.   The term "Court" shall mean the United States District Court for the Western District of Pennsylvania.

15.      **Effective Date**.   The term "Effective Date" shall mean the date upon which the Judgment becomes both final and no longer subject to appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise.   This Settlement Agreement goes into effect on the "Effective Date."

16.      **Entry-Level Police Officer.**   The term "Entry-Level Police Officer" shall mean the entry-level position of police officer in City's police department.

17.      **Equitable Relief.**   The term "Equitable Relief" shall mean the relief described in section D.

18.    **Execution Date.**  The term "Execution Date" shall mean the date this Settlement Agreement is fully executed.

19.    **Fairness Hearing**.  The term "Fairness Hearing" shall mean the hearing to be held before the Court pursuant to Fed. R. Civ. P. 23(e) to determine whether the Settlement Agreement should receive final approval by the Court.  The Fairness Hearing will be held on a date which is at least 75 calendar days after the mailing of the Class Notice and at least 90 calendar days after the mailing of the CAFA Notice.

20.    **Hough Overview**.  The term "Hough Overview" shall mean the document drafted by Dr. Leaetta Hough dated March 31, 2014, and titled "Overview-Evaluation & Recommendation."  A copy is attached hereto as Exhibit 1.

21.    **Hough Report**.  The term "Hough Report" shall mean the document drafted by Dr. Leaetta Hough dated February 19, 2014, and titled "Review of and Recommendations Regarding Pittsburgh Bureau of Police Entry-Level Hiring Practices."  A copy is attached hereto as Exhibit 2.

22.    **Judgment**.  The term "Judgment" shall mean the final order or judgment entered by the Court in This Action after the Fairness Hearing identical in all material respects to that attached hereto as Exhibit 3, granting its approval of the Settlement.

23.    **Mediator.**  The term "Mediator" shall mean Magistrate Judge Lisa Pupo Lenihan, assuming that she is able and willing to act as mediator.  If she is unable to serve, the Parties will attempt to jointly agree on a different "Mediator."  If the Parties are unable to so agree, they will seek assistance from Judge Cercone or any successor of Judge Cercone in appointing a Mediator.

24.    **Monetary Relief Award**.  The term "Monetary Relief Award" shall mean the dollar amount awarded to each Class Member and Class Representative pursuant to the Plan of Allocation and this Settlement Agreement.  The Monetary Relief Award is separate from and does not include any Case Contribution Awards for Class Representatives.

25.    **Named Plaintiffs.**  The term "Named Plaintiffs" shall mean Plaintiffs James M. Foster, Mike J. Sharp, Timothy Christian, Tariq Jamal-Francis, and Darrick Payton.

26.    **Parties**.  The term "Parties" shall mean City, by its counsel, and Class Representatives.

27.    **Plan of Allocation.**  The term "Plan of Allocation" shall mean the plan or formula of allocation of the Settlement Fund as approved by the Court.  Notwithstanding any other provision of this Agreement, any revision of the Plan of Allocation by Class Counsel, the Court, or any appellate court shall not operate to terminate or cancel or otherwise affect this Agreement.

28.    **Preliminary Approval Order.**  The term "Preliminary Approval Order" shall mean an order entered by the Court preliminarily approving the Settlement Agreement, setting the manner and form of the Class Notice, setting the date for the Fairness Hearing, and identical in all material respects to the proposed Preliminary Approval Order attached hereto as Exhibit 4.

29.   **Selection Device**.  The term "Selection Device" shall mean any examination, test, requirement, or other criterion used to evaluate an applicant's qualifications for hire as an Entry-Level Police Officer, including any application, written entrance examination, oral board interview, physical agility test or physical fitness test, reading test, drug test or screening, polygraph examination, background examination, Chief's Roundtable review, civil service appeal process, psychological examination, and physical examination which was or will be used during City's Selection Process to reject or select candidates for Entry-Level Police Officers.

30.   **Selection Process**.  The term "Selection Process" refers to the process through which City selects Entry-Level Police Officers.

31.   **Settlement**.  The term "Settlement" shall mean the compromise and settlement embodied in this Settlement Agreement.

32.   **Settlement Agreement**.  The term "Settlement Agreement" shall mean this Settlement Agreement, executed on June 8, 2015, including the Exhibits hereto.

33.   **Settlement Amount**.  The term "Settlement Amount" means $985,000 payable in two installments.  The Settlement Amount shall be used for the payment of the Monetary Relief Awards and any Case Contribution Awards.

## B.   Recitals

1.   On August 23, 2012, James M. Foster and Mike J. Sharp filed This Action on behalf of themselves and all others similarly situated against City.  Subsequently, in the Complaint, Named Plaintiffs alleged that City's hiring process for entry level police officers operated as a pattern or practice of systemic disparate treatment with respect to African-American applicants and had an Adverse Impact on those applicants.

2.   The City responded to the Complaint, and on April 29, 2013, filed a Motion to Strike Class Allegations and to Dismiss, alleging that the claims of the Named Plaintiffs were deficient and could not successfully support class-based claims before a jury.

3.   In April 2013, the Parties began mediation proceedings in an effort to resolve the Class Representatives' claims.

4.   In August 2013, the Parties executed a Stay of Litigation Agreement, which provided, *inter alia*, that the Parties would retain a joint expert, that she would be given access to all records and personnel she deemed necessary for her review, and that she would review City's hiring processes for Entry-Level Police Officers and make recommendations with respect to those processes.

5.   Consistent with their Stay of Litigation Agreement, the Parties jointly retained Dr. Leaetta Hough to review and make recommendations regarding City's hiring processes for Entry-Level Police Officers.  Dr. Hough conducted the in-depth review and analysis contemplated by the Parties, and issued a Confidential "Review of and Recommendations Regarding Pittsburgh Bureau of Police Entry-Level Hiring Practices" dated February 19, 2014 (the Hough Report), attached as Exhibit 2.

6.      The Parties, by their counsel, met with Dr. Hough on March 31, 2014, to review her Report and discuss possibilities for improvements to the hiring process.  During that meeting, Dr. Hough distributed a document dated March 31, 2014 and titled "Overview-Evaluation & Recommendation" which identified eight general categories of recommendations -- the Hough Overview, attached as Exhibit 1.

7.      The Parties agreed to continue their mediation efforts, and by Order dated April 2, 2014, the Court appointed the Honorable Lisa Pupo Lenihan as the mediator in This Action. The Parties met with Judge Lenihan on numerous occasions.  The Parties also met and otherwise communicated on a regular basis without Judge Lenihan, in additional efforts to resolve their outstanding issues.

8.      As part of the mediation process, City provided Class Counsel with files of all applicants for the position of Entry-Level Police Officer who took the written examination that City offers as part of the application process between 2008 and 2014, and who were given conditional offers of employment.  City also provided the files of all unsuccessful African-American applicants who took the written examination between 2008 and 2014 and were advanced at least to the background stage.

9.      The Parties ultimately reached an agreement to settle the claims of the Named Plaintiffs and the Class on the terms and conditions set forth herein.  The Parties entered into this agreement in an effort to accomplish several important goals, including increasing diversity in the police department, enhancing relationships within Pittsburgh's diverse population, and dedicating financial resources to innovation and implementation of state of the art selection devices and processes while avoiding costly and protracted litigation.  The Parties also based their decision to settle on such factors as Dr. Hough's Report and Overview and the Parties' review of the information provided by City during the mediation process.

## C.      Certification of This Action as a Class Action

1.      The Parties agree that This Action should be settled as a class action for a class defined as:

> All African-Americans who (1) applied for the position of Entry-Level Police Officer with City of Pittsburgh; (2) took a written police officer examination offered by City in any year between and including 2008 and 2014; (3) did not decline a conditional offer of employment from City; and (4) were not given a final offer of employment as a police officer recruit with City in that application process.

2.      The Parties agree that there are hundreds of Class Members, which is sufficient to satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

3.      The Parties agree that This Action is appropriate for class treatment under the other prerequisites for a class set forth in Fed. R. Civ. P. 23(a).

5

4.      The Parties agree that This Action is appropriate for class treatment under Fed. R. Civ. P. 23(b)(2) because if City were to be held liable, it would be because City has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

5.      The Parties agree that This Action is appropriate for certification under Fed. R. 23(b)(3) in light of the monetary relief sought and provided under the terms of this Settlement.

6.      The Parties shall seek certification of This Action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) simultaneously with their motion for preliminary approval of this Settlement.

## D.      Agreement to Entry of an Order Granting Injunctive Relief Against City

1.      City agrees that City and its officials, agents, employees, successors, and all persons acting on its behalf or in active concert or participation with it, are obligated by law and, accordingly, are enjoined from using any Selection Device or Selection Process that (a) results in disparate treatment of African-Americans on the basis of race or color; or (b) has an Adverse Impact on African-Americans on the basis of race or color and is not demonstrably job related for that position and justified by business necessity, where an alternative Selection Device would have less of an Adverse Impact; or (c) otherwise does not meet the requirements of Title VII.

2.      City further agrees that City and its officials, agents, employees, successors, and all persons acting on its behalf or in active concert or participation with it, are in accordance with law, enjoined from retaliating against or otherwise adversely affecting any person because he or she (a) opposed the Alleged Discriminatory Practice; (b) in any way participated or cooperated in the investigation or litigation of the Alleged Discriminatory Practices; or (c) has benefited from this Settlement.

3.      Although there has been no finding of liability, the City nonetheless agrees within 24 months of the Execution Date to complete implementation of a series of reforms and improvements to its Selection Process as outlined in §D for the position of Entry-Level Police Officer that are designed to eliminate or reduce Alleged Discriminatory Practices.   Also within 24 months of the Execution Date, City shall begin to implement and conduct validity studies for its Selection Devices.  The Parties may mutually agree in writing to extend either or both of these periods.  In the event that Plaintiffs do not agree to an extension that City believes is necessary, City may schedule a meeting with the Mediator, who will attempt to help the Parties resolve their differences and, if necessary, decide whether an extension is warranted, and, if so, for how long.

4.      City shall retain, and agree to pay all fees and costs to, Dr. Hough and E.B. Jacobs (collectively "Experts"), per paragraphs D.5 and E.2 herein, to work with the Parties to develop and implement a plan to improve City's hiring practices for Entry-Level Police Officers with the goal of eliminating the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

5.      The City has dedicated $250,000 in its 2015 Operating Budget to fund this expert review to ensure that all Selection Devices used in the Selection Process have been revised as recommended by the Experts so as to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

6.     The Parties agree that they shall be guided by the Hough Report, the Hough Overview, and any other information agreed to by the Experts in working to identify and implement necessary changes to City's Selection Process for Entry-Level Police Officers that eliminate the Adverse Impact on African-American applicants so as to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

7.     The Mayor will issue an Executive Order to appoint a Special Committee to work with the experts to identify and implement the above-referenced changes and it will consist of the Chief of Police or his designee, the Director of the Department of Personnel and Civil Service or his designee, the Solicitor and Chief Legal Officer or her designee, the Director of the Office of Municipal Investigations, and Class Counsel Working Group. The Special Committee will be led by the Director of Personnel.  By Executive Order the Mayor will also appoint an Advisory Committee to the Special Committee.  The Advisory Committee shall be led by the City's Solicitor and Chief Legal Officer and will consist of eight additional members with relevant experience with either best policing practices or community impact.  The Advisory Committee shall also include the Class Counsel Working Group.

8.     The City agrees that, in consultation with the Experts and the Class Counsel Working Group, it shall work to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom, and to make necessary changes and/or improvements to any Practices which are found to be insufficient, by following and implementing the eight steps recommended in the Hough Overview, which are incorporated herein by reference from pages 2-4 of App. 1, and are summarized as follows:

    a.    Within three months, the City shall update the job analysis, including but not limited to, incorporating integrity, dependability and cultural competence as job requirements ("Step 1");

    b.    Within six months, the City shall develop a construct-oriented measurement plan for the entire Selection Process that ensures all knowledge, skills, abilities and other characteristics ("KSAO's") important to performance as an Entry-Level Police Officer are included, and those that are unimportant are avoided ("Step 2");

    c.    Within one year, the City shall review all existing Selection Devices, individually and in combination, and the Selection Process as a whole, to identify possible causes of Adverse Impact on African-American applicants ("Step 3");

    d.    Within one year, the City shall alter current or develop new Selection Devices designed to remedy Adverse Impact on African-American applicants ("Step 4");

    e.    Within one year, the City shall revise the rating process, including but not limited to developing rating scales that specify standards and guidelines to ensure a structured, objective, and systematic evaluation that is reliable and valid, notably for the Oral Boards, background investigation and Chief's Roundtable stages of the Selection Process, designed to remedy Adverse Impact on African-American applicants ("Step 5");

7

    f.        Within two years, City shall conduct validity studies for all Selection Devices contained in the Selection Process ("Step 6");

    g.        Within one year, City shall improve applicant preparation materials and classes ("Step 7"); and

    h.        Within eighteen months, the City shall design and begin conducting continuous and ongoing validation and monitoring of the revised Selection System ("Step 8").

## E.    Enforcing Compliance with Agreement

1.      The Parties agree that any substantial disagreements between the Parties regarding: the design, implementation and operation of, or revision to the Selection Process; a course of action that differs from the Hough Report or the Hough Overview; or work the Experts have estimated is required to satisfy the terms in §D of this Settlement Agreement on the Effective Date will be mediated by the Mediator. In the event of such mediation, the Mediator shall consider the position taken by the Experts, and may require them to testify or submit a written report, in rendering a decision. The City shall pay any fees incurred by the Experts in this process, unless the Mediator concludes that the Class Counsel Working Group frivolously brought this disagreement before her; in that case, the Mediator may order that expert fees be paid by Class Counsel. The parties have a right to appeal the Mediator's decision to the District Court and to the Third Circuit Court of Appeals.

2.      If, during the term of this agreement, additional expert services are still required to satisfy the terms of Section D of this Settlement Agreement, through either an agreement by the Parties, an acceptable decision by the Mediator or by a Court Order, the City will obtain estimates and then allocate the additional monies needed to pay the experts and otherwise complete the additional work. If City Council does not approve the expenditure, Class Counsel may petition for a hearing with the District Court on the issue of compliance with Section D of this Settlement Agreement. The Court's decision shall be subject to appeal to the Third Circuit Court of Appeals. If Class Counsel is successful, they may petition the court to award reasonable attorneys' fees for litigating the petition and any appeal thereof. -

## F.    Preliminary Reform Efforts

1.      City, in consultation with the Experts, has already made preliminary changes to the Selection Process for use in selecting a February 2015 class of Entry-Level Police Officers. These included, but were not limited to, elimination of the rule-of-three and three-strikes requirements for the Chief's Roundtable, and providing a right to appeal adverse decisions by the Chief's Roundtable to the City's Civil Service Commission.

2.      In the Fall of 2014, after reviewing the Hough Report and Class Counsel's analysis of applicant files between 2009 and 2014, and determining that there existed a strong basis in evidence that may  support a conclusion that the former hiring process discriminated against African-American applicants under Title VII, the Parties agreed to adopt interim relief that allowed certain Class Members to be considered for inclusion into a new class of Entry-Level Police Officers to begin in the first nine months of 2015. Magistrate Judge Lenihan, acting as mediator, was apprised of and approved the proposed interim relief.

3.      All interim and/or preliminary changes made to the Selection Process are subject to reconsideration and revision by the Parties and Experts during the comprehensive review of the entire Selection Process to be implemented under this Settlement Agreement.

**G.      Rights to Reconsideration for Selection**

1.      Named Plaintiffs and Class Members who previously made it to the background-investigation stage, the Chief's Roundtable, or beyond, but were not selected for a police officer position, are eligible to apply for the next recruit class – with selection beginning in Spring 2015. They shall receive the ranking they received previously on their respective civil service tests.

2.      City agrees that if any future Civil Service class is processed before Class Notice is provided to Class Members, City shall notify all Named Plaintiffs and Class Members as follows prior to publicly advertising the next new Civil Service class and offering a new round of written and oral tests:

      a.      This Action has been filed against City, and the Class Representatives allege therein that City has discriminated against African-Americans in the hiring of Entry-Level Police Officers.

      b.      Pursuant to the settlement of This Action, certain changes have been made to the Selection Process designed to remedy any adverse impact against African-American applicants.

      c.      If Class Members are interested, City is hiring Entry-Level Police Officers and would like to invite them to apply.

      d.      Failure to apply for hire will not affect Class Members' eligibility to receive other relief in This Action under the Settlement.

      e.      Regardless of whether Class Members are hired, if the Judgment is entered by the Court, Class Members are entitled to relief under that Judgment.

3.      Neither Class Members' decision to re-apply to become Entry-Level Police Officers in 2014, 2015 or thereafter, or the City's decision to hire or not hire them, affects Class Members' entitlement to damages or their Monetary Relief Amount, as established by the Plan of Allocation.

**H.      Communication with Experts and Role of Class Counsel Working Group**

1.      City agrees that even though Experts are retained and paid by City, Experts are obligated and authorized to share their independent professional judgment about how best to reform the Selection Process with the Class Counsel Working Group, and the Class Counsel Working Group is entitled to share information that it has collected or will collect about the City's Selection Devices with Experts.

2.      City agrees that the Class Counsel Working Group will be involved in all important decision-making involving changes to the Selection Process and/or monitoring of the

revised Selection Process as required by this Settlement Agreement. Among other things, City agrees that the Class Counsel Working Group has a right to participate in any telephone calls or to attend any meetings or discussion with experts involving significant changes to the design, implementation and operations of, and/or revisions to the Selection Process. City also agrees to provide the Class Counsel Working Group with reasonable advance notice of all such calls and meetings. Class Counsel Working Group may contact the experts directly so long as the City is simultaneously contacted and participates in the discussion.

3.      The Parties agree that any substantial disagreements between the Parties regarding the design, implementation and operation of, or revision to, the Selection Process will be mediated by the Mediator. In the event of such mediation, the Mediator shall consider the position taken by the Experts, and may require them to testify or submit a written report, in rendering a decision. If the Parties are still unable to reach agreement, the Mediator will have final authority to resolve the outstanding issues. City shall pay any fees incurred by the Experts in this process, unless the Mediator concludes that the Class Counsel Working Group frivolously brought this disagreement before her; in that case, the Mediator may order that expert fees be paid by Class Counsel.

4.      On an ongoing and timely basis, City shall provide reports to Class Counsel setting forth statistical and demographic data on applicants participating in any new Selection Process that is underway, any new Civil Service testing to produce a new certified list of applicants, and any new recruit class for hire, including but not limited to the demographics of applicants at each stage of the Selection Process and description of who has advanced at each stage of this Process.

5.      In order to ensure compliance with this Settlement Agreement and that improvements are working, the Class Counsel Working Group may request to review the City's files of applicants for the position of Entry-Level Police Officer, subject to the Confidentiality Agreement previously entered in this case. If the City refuses to honor the file request, Class Counsel may petition the Mediator to order access to the files for purposes of such review.

6.      The term of this Settlement Agreement is 36 months from the Execution Date, unless Class Counsel successfully petitions the Court to extend this period for good cause shown, or City successfully petitions the Court to reduce this period for completion of required tasks and good cause shown.

## I.   Agreement to Payments In Two Installments

1.      City has agreed to pay $985,000 as the Settlement Amount for payment of Monetary Relief Amounts to the Class Representatives and Class Members and for payment of Case Contribution Awards of up to $20,000 apiece as awarded by the Court to each of the Class Representatives. As further described below, the City shall make its first payment toward this amount within ten business days of the Effective Date, and its second payment on or before March 1, 2016.

2.      City has also agreed to pay up to $600,000 for Attorneys' Fees, Costs, and Expenses, as awarded by the Court. Attorneys' Fees, Costs and Expenses, as awarded by the Court, shall be paid in two payments, the first to be paid by the City within forty-five (45) days of the Effective Date, and the second to be paid by the City on or before March 1, 2016.

3.      Within ten business days of the Effective Date, City shall encumber the amount of $800,000. The City shall use this $800,000 to pay each of the following within forty-five (45) days of the Effective Date: 1) Counsel's Costs and Expenses as awarded by the Court; 2) Case Contribution Awards as awarded by the Court; 3) $100,000 of the amount of Attorneys' Fees awarded by the Court, and 4) the remainder to be used to pay Class Members' proportionate share of Monetary Relief Awards under the Plan of Allocation as directed by Class Counsel.

4.      Sufficiently prior to March 1, 2016 so that it can make required disbursements by that date, City shall encumber $785,000 to be paid as follows: 1) the unpaid portion of the amount awarded by the Court as Attorneys' Fees to be paid to Class Counsel; plus 2) the remainder of the $985,000 Settlement Amount to be used to pay Class Members' proportionate share of Monetary Relief Awards under the Plan of Allocation which were not previously paid out of the first payment in 2015 and as directed by Counsel.

5.      City shall, to the extent required by law, withhold from each Class Member's monetary relief award all appropriate federal and state income taxes and any other required employee withholdings or deductions. In accordance with local ordinances, before payment can be released to any individual, it must be determined that the individual does not owe any outstanding taxes, fees or other monies to the City of Pittsburgh.

6.      City shall send the required payments to Class Members along with a copy of the Notice of Entry of Judgment, Exhibit 5 hereto, by certified U.S. mail (return receipt requested), to the last known address of each Class Member.

## J.      Preliminary Approval, and Class Action Notice and Procedures

1.      **Motion for Preliminary Approval.**  As soon as practicable after execution of this Agreement, Class Counsel and City shall file a motion for preliminary approval of the Settlement, seeking entry of an order identical in all material respects to the form of the Preliminary Approval Order attached as Exhibit – hereto, and approval of Class Notice attached as Exhibit 6 hereto.  The proposed Preliminary Approval Order shall:

a.      Preliminarily approve the Settlement, including the Plan of Allocation;

b.      Provide for notice to all Class Members through first class mail, postage prepaid (the "Class Notice");

c.      Find that the Class Notice fairly and adequately:

(i)      describes generally the terms and binding effect of the Settlement and this Settlement Agreement and explains the Plan of Allocation;

(ii)      gives notice of the time and place of the Fairness Hearing;

11

(iii)   describes how an objection may be made to entry of the Final Approval Order and the deadline for the filing of such objection;

(iv)   describes how Class Counsel will apply to the Court for an award of attorneys' fees and for reimbursement of costs and expenses, and the deadline for the filing of such application and the right of members of the Class to object to such awards; and

(v)   describes how the Class Representatives will apply to the Court for Case Contribution Awards, identify the deadline for the filing of such application, and provide for the right of members of the Class to object to such awards;

d.   Find that service of the Class Notice via first class mail, postage prepaid, at the last known address is the best practicable methods of transmitting the Class Notice; and

e.   Provide that Class Members have a right to opt out of the Settlement.

2.   **Class Notice**.  Pursuant to the Preliminary Approval Order to be entered by the Court, City shall cause the Class Notice to be disseminated to the Class no later than fifteen (15) calendar days after entry of the Court's Preliminary Approval Order by first-class mail, postage prepaid.  City shall send the Class Notice to the last known mailing address of each Class Member, which mailing address shall be updated through the National Change of Address database. Until entry of Judgment, copies of the Class Notice and this Settlement Agreement shall also be made available for inspection by Class Members at the Court, at the Pittsburgh office of the American Civil Liberties Union of Pennsylvania, on City's website, and on the Feinstein Doyle Payne & Kravec, LLC website.

3.   **Undeliverable Notices**.  In the event that a Class Notice sent by mail is returned as undeliverable, City shall make reasonable efforts to obtain a valid mailing address within fifteen calendar days of the date of the return of the Class Notice.  Following each search that results in a corrected address, City shall promptly resend the Class Notice to the Class Member by first-class mail, postage prepaid.

4.   **Issuance of Notice under the Class Action Fairness Act**.  Pursuant to CAFA, City shall prepare and provide copies of the Class Notice to the appropriate individuals and/or entities as specified by 28 U.S.C. § 1715, within ten calendar days after filing of the Preliminary Approval Motion. If any federal or state authority objects to and/or requests modifications of the Settlement Agreement, within ten business days of receiving any such objection or request, the Parties shall meet and confer regarding whether to modify the terms of this Settlement Agreement to facilitate the withdrawal of the objection and/or request.

5.   **Right to Object**.  Class Members have the right to object to the Settlement, including to the certification of this action as a class action; the adequacy of the named plaintiffs as Class Representatives and/or to the adequacy of Class Counsel; the fairness of the Settlement and the Plan of Allocation; the Attorneys' Fees, Costs and Expenses requested by Class Counsel; and the Case Contribution Awards requested for the Class Representatives.  Class Members may,

12

but need not, appear to present their Objections to the Court at the Fairness Hearing. They also may, but need not, retain counsel at their own expense to present their Objections. Objections shall be filed on or by 10 days prior to the date set for the Fairness Hearing.

6.      **Right to Opt Out**. Class Members have the right to opt out of the Class and not be bound by the Final Judgment to be entered in This Action. In the event that three or more Class Members timely and properly exclude themselves from the Class, either Party shall have the right to withdraw from the Settlement. Once either Party notifies the other that at least three Class Members have opted out, both Parties shall have five business days from the date of that notification to decide whether they wish to withdraw from the Settlement and to so notify the other Party and the Mediator. Upon such notification, the Parties will have an additional ten business days to discuss the matter in conjunction with the Mediator; the Mediator may for good cause extend this discussion period. If upon the conclusion of the discussion period either Party wishes to withdraw from the Settlement, it shall within one business day in writing so advise the other Party, the Mediator, and the Court. Delivery of this withdrawal will render this Settlement Agreement null and void, and the Parties will immediately jointly ask the Court to hold a scheduling conference for the purpose of recommencing the litigation.

7.      The requirements for objecting or, alternatively, opting out are set forth in the Class Notice attached hereto as Ex. 6, and in the Preliminary Approval Order attached hereto as Ex. 4.

8.      **Motion for Final Approval**. On the date set by the Court in its Preliminary Approval Order, Class Counsel and City shall file a motion (the "Final Approval Motion") for entry of the Final Approval Order and Judgment.

## K.      Duration and Termination of Settlement Agreement

1.      This Settlement Agreement shall remain in effect as described herein unless and until terminated in accordance with this Section. If anything precludes entry of a Final Judgment approving this Settlement Agreement, City and Class Counsel shall meet and make a good faith effort to settle This Action. If they are unable to do so within 30 days, they shall reconvene their mediation with the Mediator and make a good faith effort to mediate their differences. If they are unable to do so, either may on 30 days' notice terminate this Settlement Agreement.

## L.      Statements of No Admissions and No Prejudice

1.      Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, the Judgment, the Notice Order, or any documents filed with the Court in This Action, City denies and continues to deny any wrongdoing or legal liability arising out of any of the allegations, claims and contentions made against City in This Action and in the course of the negotiation of this Settlement Agreement.

2.      Notwithstanding anything to the contrary, whether set forth in this Settlement Agreement, the Judgment, the Notice Order, or any documents filed with the Court in This Action, the Class Representatives and Class Members claim and continue to claim that the allegations, claims and contentions made against City in This Action have merit. Neither this Settlement Agreement nor any document referred to or contemplated herein nor any actions undertaken in support of this Settlement may be construed as, or may be viewed or used as, an admission by or against the Class Representatives or Class Members.

13

3.      Entry into and performance under this Settlement Agreement shall not be construed as, or deemed to be evidence of, an admission by any Party, and shall not be offered or received in evidence in any action or proceeding against any Party, including but not limited to any Class Member, in any court, administrative agency or other tribunal or forum for any purpose whatsoever other than to enforce the provisions of this Settlement Agreement or to obtain or seek approval of this Settlement Agreement in accordance with Fed. R. Civ. P. 23 and CAFA.

4.      This Settlement Agreement and anything occurring in connection with reaching this Settlement Agreement are without prejudice to City, the Class Representatives and Class Members. The Parties may use this Settlement Agreement to assist in securing the Judgment approving the Settlement. It is intended that the Parties may not use this Settlement Agreement, or anything occurring in connection with reaching this Settlement Agreement, as evidence against the Parties in any circumstance except where the Parties are operating under or enforcing this Settlement Agreement or the Judgment approving this Settlement Agreement.

## M.    Attorneys' Fees, Costs and Expenses

1.      Attorneys' Fees, Costs, and Expenses.  At least thirty days before the date set for the Fairness Hearing, Class Counsel shall apply for an award of attorney's fees, and for reimbursement of costs and expenses, to be paid as provided under this Settlement Agreement. In recognition of the substantial benefit the settlement confers upon the Class, City agrees to pay Class Counsel an amount in addition to the $985,000 it has agreed to pay for Monetary Relief Awards and Case Contribution Awards.  These reasonable attorneys' fees shall not exceed $600,000, and shall be based on Class Counsel's lodestar, along with costs and expenses incurred in the prosecution and settlement of this case.  In connection with this agreement, City agrees to support Class Counsel' application for reimbursement by City of expenses and reasonable attorney and professional fees, including expert fees, for hours worked, in an amount to be determined in accordance with current market rates incurred in connection with the court proceedings to obtain the Judgment approving this Settlement Agreement.  In the event that City elects to challenge the reasonableness of Class Counsel's fees, City agrees that Class Counsel may seek reimbursement of its fees in defending on this point, even if this results in a total fee award that exceeds $600,000.  Approval of Class Counsel's fee request will be included in the Judgment.

2.      Within forty-five (45) days of the Effective Date, City shall pay Class Counsel their Costs and Expenses as awarded by the Court and $100,000 of the Attorneys' Fees awarded by the Court.

3.      On or by March 1, 2016, City shall pay any Attorneys' Fees awarded by the Court and not paid in 2015.

## N.    Case Contribution Awards

1.      Case Contribution Awards for Class Representatives.  Class Counsel shall seek and City shall not oppose the award by the Court of Case Contribution Awards of up to $20,000 per Class Representative.  Class Counsel shall petition for the award of Case Contribution Awards at least thirty (30) days prior to the date set for the Fairness Hearing.

2.     Within thirty (45) days of the Effective Date, City shall pay Class Representatives Case Contribution Awards approved by the Court.

**O.     Releases and Certain Related Matters**

1.     In consideration of City's entry into this Settlement Agreement, and the other obligations of City contained herein, the Class Representatives hereby consent to the entry of the Judgment, which will be binding upon the City and all Class Members who do not opt out of the Class pursuant to Fed. R. Civ. P. 23(b).  All of the release provisions set forth in this Settlement Agreement shall be provided in or encompassed by the Judgment.

2.     As of the Distribution Date, the City and its current and former employees, attorneys, officers, directors and agents thereof and the current and former trustees or administrators of any pension or other benefit plan applicable to the employees or former employees of City (collectively referred to throughout the remainder of this Agreement as "Releasees"), shall be released of and from any and all claims, demands, liabilities, obligations, promises, controversies, damages, rights, actions and causes of action, known and unknown, whether in law or equity, which Class Members have or may have asserted against the City related to or stemming from the claims raised in the Complaint, including claims related to or stemming from implementation of the Interim Relief, through February 28, 2015, including claims at common law, under contract, or under any statute or law, federal state or local, including but not limited to any alleged violation of:  Title VII of the Civil Rights Act of 1964, as amended; the Pennsylvania Human Relations Act; and any other federal, state or local law; or any allegation for costs, fees, or other expenses including attorneys' fees (all of the above collectively referred to as "Claims").

3.     This release is intended to be a release of claims that are related to or stemming from the claims raised in this Action.  It excludes those claims under any statute or common law that Class Members are legally barred from releasing.  The release does not include any claim that cannot be released or waived as a matter of law including any right to enforce any term of this Agreement or any claims based on acts or events occurring after the effective date of this Agreement.

**P.     Other Provisions**

1.     References in this Settlement Agreement to "Sections," "Paragraphs" and "Exhibits" refer to the Sections, Paragraphs, and Exhibits of this Settlement Agreement unless otherwise specified.

2.     The Court will retain exclusive jurisdiction to resolve any disputes relating to or arising out of or in connection with the enforcement, interpretation or implementation of this Settlement Agreement.

3.     This Settlement Agreement constitutes the entire agreement between the parties regarding the matters set forth herein, and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement, other than representations, warranties and covenants contained and memorialized in this Settlement Agreement.  This Settlement Agreement supersedes any prior understandings, agreements or representations by or between the parties, written or oral, regarding the matters set forth in this Settlement Agreement.

15

4.      The captions used in this Settlement Agreement are for convenience of reference only and do not constitute a part of this Settlement Agreement and will not be deemed to limit, characterize or in any way affect any provision of this Settlement Agreement, and all provisions of this Settlement Agreement will be enforced and construed as if no captions had been used in this Settlement Agreement.

5.      This Settlement Agreement may be executed in two or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts.

6.      No party to this Settlement Agreement may assign any of its rights hereunder without the prior written consent of the other parties, and any purported assignment in violation of this sentence shall be void. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

7.      Each of City, Class Representatives, Class Members and Class Counsel shall do any and all acts and things, and shall execute and deliver any and all documents, as may be necessary or appropriate to affect the purposes of this Settlement Agreement.

8.      This Settlement Agreement shall be construed in accordance with applicable federal laws of the United States of America.

9.      Any provision of this Settlement Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, and any such provision, to the extent invalid or unenforceable, shall be replaced by a valid and enforceable provision preserving the same economic effect for the parties under this Settlement Agreement.

10.     In the event that any payment referenced in this Settlement Agreement is due to be made on a weekend or a holiday, the payment shall be made on the first business day following such weekend or holiday.

11.     This Settlement Agreement is, in its entirety, subject to approval by the Court and City Council and other terms and conditions set forth herein.

IN WITNESS THEREOF, the parties hereto have caused this Settlement Agreement to be executed by themselves or their duly authorized attorneys.

**AGREED:**

Class Representatives:

| | |
|---|---|
| James M. Foster | 5-6-15<br>Date |
| Mike J. Sharp | 5-6-15<br>Date |
| Timothy Christian | 5-04-15<br>Date |
| Tariq Jamal-Francis | 5-04-15<br>Date |
| Darrick Payton | 5-04-15<br>Date |

17

Witold J. Walczak
PA I.D. 62976
vwalczak@aclupa.org
Sara J. Rose
PA I.D. 204936
srose@aclupa.org
American Civil Liberties Union of PA
313 Atwood Street
Pittsburgh, PA 15213
(412) 681-7864

Edward J. Feinstein
PA I.D. 29718
efeinstein@fdpklaw.com
Ellen M. Doyle
PA I.D. 21854
edoyle@fdpklaw.com
Pamina Ewing
PA I.D. 59244
pewing@fdpklaw.com
FEINSTEIN DOYLE PAYNE
   & KRAVEC, LLC
429 Forbes Avenue, Suite 1705
Pittsburgh, PA 15219
Tel: (412) 281-8400

*Attorneys for the Class Representatives and the Proposed Class*

/s/

William M. Peduto
Mayor, City of Pittsburgh

/s/

Lourdes Sánchez-Ridge
Chief Legal Officer and
Solicitor, City of Pittsburgh

Wendy Kobee
Assistant Solicitor
City of Pittsburgh
Department of Law
313 City County Building
Pittsburgh, PA  15219
(412) 255-2002

*Attorneys for the City of Pittsburgh*

19