THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES M. FOSTER, MIKE J. SHARP, TIMOTHY CHRISTIAN, TARIQ JAMAL-FRANCIS, and DARRICK PAYTON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF PITTSBURGH,<br><br>Defendant. | Case No. 2:12cv1207<br><br>District Judge David Stewart Cercone<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**CORRECTED JUDGMENT AND ORDER GRANTING MOTION FOR FINAL CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES, AND MOTION FOR APPROVAL OF CLASS REPRESENTATIVE SERVICE AWARDS**

Plaintiffs James M. Foster, Mike J. Sharp, Timothy Christian, Tariq Jamal-Francis, and Darrick Payton ("Class Representatives") filed this class action on August 23, 2012, challenging the Defendant City of Pittsburgh's hiring process for entry-level police officers. On behalf of a class of African-American job applicants ("Class"), Plaintiffs asserted, *inter alia*, disparate treatment and disparate impact claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiffs alleged that the City's hiring process operated as a pattern or practice of systemic disparate treatment with respect to African-American applicants, and had an adverse impact on those applicants. Plaintiffs further alleged that the City lacked any legitimate business justification for the challenged hiring practices, and that there were suitable alternative selection procedures that would have had a lesser adverse impact.

1

Following the preparation and submission of a lengthy report on the City's hiring process by the parties' jointly retained expert, Dr. Leaetta Hough, the parties' extensive mediation efforts before Magistrate Judge Lisa Pupo Lenihan, and the City's provision of voluminous pertinent documents, the parties agreed to settle this litigation. The settlement includes monetary relief of $985,000 as well as substantial injunctive relief.

On July 13, 2015, this Court entered an Order preliminarily approving the proposed settlement, conditionally certifying the settlement class, and authorizing notice to be issued to Class Members. On or about July 23, 2015, the City sent notice to all Class Members informing them of their right to opt out of or object to the settlement. On October 16, 2015, Plaintiffs moved for Final Certification of the Settlement Class and Final Approval of the Class Action Settlement ("Motion for Final Approval"). On October 16, 2015, Plaintiffs moved for Approval of Attorneys' Fees and Reimbursement of Expenses ("Motion for Attorneys' Fees") and for Class Representative Service Awards ("Motion for Service Awards").

The Court held a fairness hearing on November 16, 2015. Having considered the Motion for Final Approval, the Motion for Attorneys' Fees, the Motion for Service Awards, the Plan of Allocation, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, and for good cause shown, **NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

### I. FINAL APPROVAL OF SETTLEMENT

1. The Court grants final approval of the settlement memorialized in the Settlement Agreement at Dkt. #69-1.

2. The Court concludes that the settlement meets the requirements for settlement approval under Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975). Application of the pertinent

Girsh factors establishes that the proposed settlement is fair, reasonable and adequate for the class and should be approved.

3. Notably, "[T]he probable cost, in both time and money, of continued litigation" weighs in favor of resolution. See Erie Cnty. Retirees Ass'n, v. Cnty. of Erie, Pennsylvania, 192 F.Supp.2d 369, 373 (W.D.Pa.2002) (citing In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995)).

4. In addition, the reaction of the class to news of the settlement has generally been positive. In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 317 (3d Cir. 1998).

5. As noted, the City provided Class Counsel with voluminous relevant documents. These included the files of all Caucasian applicants for the position of Entry-Level Police Officer who took the written examination that the City offers as part of the application process between 2008 and 2014 and who were given conditional offers of employment. The City also provided the files of all unsuccessful African-American applicants who took the written examination between 2008 and 2014 and advanced at least to the background stage. Class Counsel reviewed these files, and presented a summary of their findings to Judge Lenihan and counsel for the City. Based on these documents and other documents reviewed in this case, as well as on Dr. Hough's detailed report, the Court concludes that the parties had "an adequate appreciation of the merits of the case before negotiating." See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004) (internal quotation marks omitted).

6. The risks of proceeding with the litigation, including with respect to obtaining class status, favor resolution. See In re Cendant Corp. Litig., 264 F.3d 201, 237–39 (3d Cir. 2001). In addition, the $985,000 monetary amount and injunctive relief that the settlement

provides represent a good value given the attendant risks of litigation. See In re AT&T Corp., 455 F.3d 160, 169 (3d Cir. 2006).

## II.   DISSEMINATION OF NOTICE

7.   The City sent the Court-approved notice by first-class mail to each class member at his or her last known address, and re-mailed returned notices. The Court finds that the notice fairly and adequately advised Class Members of the terms of the settlement, as well as their right to opt out of the class, to object to the settlement, and to appear at the fairness hearing. Class members were provided the best notice practicable under the circumstances. The Court further finds that the notice and its distribution comported with all constitutional requirements, including those of due process.

## III.   FINAL CERTIFICATION OF THE PROPOSED RULE 23 SETTLEMENT CLASS

8.   The Court grants final certification of the following class under Fed.R.Civ.P. 23:

All African-Americans who (1) applied for the position of Entry-Level Police Officer with City of Pittsburgh; (2) took a written police officer examination offered by City in any year between and including 2008 and 2014; (3) did not decline a conditional offer of employment from City; and (4) were not given a final offer of employment as a police officer recruit with City in that application process.

9.   Plaintiffs have demonstrated all of the requirements for class certification under Fed.R.Civ.P. 23(a), (b)(2), and (b)(3).

10.   Fed.R.Civ.P. 23(a)(1) is satisfied because there are hundreds of Class Members and joinder is thus impracticable.

11.   The alleged Title VII violation involving common operative facts stemming from the City's treatment of Class Members in the same way is sufficient to meet Rule 23(a)'s commonality factor. More particularly, Fed.R.Civ.P. 23(a)(2) is satisfied because the Class

4

Representatives and Class Members share common issues of fact and law, including whether the City's hiring practices had a disparate impact on African-Americans and whether those practices were justified by business necessity.

12. Fed.R.Civ.P. 23(a)(3) is satisfied because the Class Representatives' and the Class Members' claims arise from the same course of events – they all applied for entry-level police officer positions and were denied employment based on the City's hiring practices. They also make the same legal arguments in support of their claims – that the City's hiring practices resulted in disparate treatment of African-Americans, and also had a disparate impact on African-Americans and was not justified by business necessity.

13. Fed.R.Civ.P. 23(a)(4) is satisfied because there is no evidence that the Class Representatives' and the Class Members' interests are at odds. In addition, the Court finds that Class Counsel are competent and well-versed in this area of law, based on their handling of this case and the materials they submitted in conjunction with their Motion for Attorneys' Fees.

14. Plaintiffs' claim for injunctive relief satisfies Fed.R.Civ.P. 23(b)(2) because the City applied the same hiring process to all members of the class, and thus the class as a whole shares the same interest in obtaining the injunctive relief provided by the settlement — prospective changes to the hiring process.

15. Plaintiffs' claim for monetary damages satisfies Rule 23(b)(3) because common factual allegations and a common legal theory predominate over any factual or legal variations among Class Members. Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually.

## IV. AWARD OF FEES AND COSTS TO CLASS COUNSEL

16. The Court finally appoints Witold J. Walczak, Sara J. Rose, and the American Civil Liberties Union of Pennsylvania ("ACLU"), and Edward J. Feinstein, Ellen M. Doyle, Pamina Ewing, and Feinstein Doyle Payne & Kravec, LLC ("FDPK"), as Class Counsel, because they met all of the requirements of Fed.R.Civ.P. 23(g).

17. Class Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiffs and the Class Members' claims.

18. Class Counsel have substantial experience prosecuting and settling class actions and are well-versed in employment law and in class action law.

19. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests. In addition, Class Counsel have committed substantial resources to prosecuting this case.

20. The Court grants Plaintiffs' Motion for Fees in the amount of $561,891.34.

21. The Court finds that the amount of fees requested is fair and reasonable. The time and effort that Class Counsel devoted to this case, more than 2579.95 hours of attorney time over four years, weigh in favor of the requested fees.

22. The Court also awards Class Counsel reimbursement of their litigation expenses in the amount of $38,108.66, which the Court deems to be reasonable.

## V. SERVICE AWARDS

23. The Court finds reasonable the requested service award of $20,000 to each Class Representative in recognition of the services that they provided to the class, including the risks and publicity they incurred. These awards shall be paid from the Settlement Amount.

## VI. APPROVAL OF PLAN OF ALLOCATION AND CLASS ACTION SETTLEMENT PROCEDURE

24. The Court hereby approves the Plan of Allocation submitted by Class Counsel.

25. The "Effective Date" of the settlement shall be the date upon which this judgment becomes both final and no longer subject to appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise.

26. Within ten business days of the Effective Date, City shall encumber the amount of $800,000. The City shall use this $800,000 to pay each of the following within forty-five (45) days of the Effective Date: 1) Class Counsel's costs and expenses as awarded above; 2) Case Contribution Awards as awarded above; and 3) $100,000 of the total amount of attorneys' fees awarded above. The remainder shall be used within 45 days of the Effective Date to pay a portion of Class Members' Monetary Relief Awards under the Plan of Allocation as directed by Class Counsel. Sufficiently prior to March 1, 2016, so that it can make required disbursements by that date, City shall encumber $785,000 to be paid as follows: 1) the unpaid portion of the amount awarded by the Court as Attorneys' Fees to be paid to Class Counsel; plus 2) the remainder of the $985,000 Settlement Award to be used to pay Class Members' proportionate share of the Monetary Relief Awards under the Plan of Allocation which were not previously paid out of the first payment in 2015 and as directed by Counsel.

27. The Court retains jurisdiction over this action for the purpose of enforcing the Settlement Agreement. The parties shall abide by all other terms of the Settlement Agreement and this Order.

## VII. INJUNCTIVE RELIEF

28. In connection with the hiring of entry level police officers, the City and its officials, agents, employees, successors, and all persons acting on its behalf or in active concert

or participation therewith are enjoined from using any Selection Device or Selection Process that (a) results in disparate treatment of African-Americans on the basis of race or color; or (b) has an Adverse Impact on African-Americans on the basis of race or color and is not demonstrably job related for that position and justified by business necessity, where an alternative Selection Device would have less of an Adverse Impact; or (c) otherwise does not meet the requirements of Title VII.

29. The City and its officials, agents, employees, successors, and all persons acting on its behalf or in active concert or participation with it are enjoined from retaliating against or otherwise adversely affecting any person because he or she (a) opposed any Alleged Discriminatory Practice; (b) in any way participated or cooperated in the investigation or litigation of any Alleged Discriminatory Practices; or (c) has benefited from this Settlement.

30. Within 24 months of the Execution Date, i.e., within 24 months of June 8, 2015, or by June 8, 2017, the City shall complete implementation of a series of reforms and improvements to its Selection Process for the position of Entry-Level Police Officer that are designed to eliminate or reduce Alleged Discriminatory Practices. Also within 24 months of the Execution Date, the City shall begin to implement and conduct validity studies for its Selection Devices. The Parties may mutually agree in writing to extend either or both of these periods. In the event that Plaintiffs do not agree to an extension that the City believes is necessary, the City may schedule a meeting with Judge Lenihan, who will attempt to help the Parties resolve their differences and, if necessary, decide whether an extension is warranted, and, if so, for how long.

31. The City shall retain, and agree to pay all fees and costs to, Dr. Hough and E.B. Jacobs (collectively "Experts") to work with the Parties to develop and implement a plan to improve City's hiring practices for Entry-Level Police Officers with the goal of eliminating the

Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

32. The Parties shall be guided by the Hough Report, the Hough Overview, and any other information agreed to by the Experts in working to identify and implement changes to City's Selection Process for Entry-Level Police Officers that eliminate the Adverse Impact on African-American applicants so as to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

33. The City has dedicated $250,000 in its 2015 Operating Budget to fund this expert review to ensure that all Selection Devices used in the Selection Process have been revised as recommended by the Experts so as to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom.

34. If, during the term of the Settlement Agreement, additional expert services are still required to satisfy the terms of Section D of the Settlement Agreement, through either an agreement by the Parties, an acceptable decision by the Mediator, or by an Order of this Court, the City will obtain estimates and then allocate the additional monies needed to pay the experts and otherwise complete the additional work. If City Council does not approve the expenditure, Class Counsel may petition for a hearing with this Court on the issue of compliance with Section D of the Settlement Agreement. This Court's decision shall be subject to appeal to the Third Circuit Court of Appeals. If Class Counsel is successful, they may petition the court to award reasonable attorneys' fees for litigating the petition and any appeal thereof.

35. If he has not already done so, the City's Mayor shall issue an Executive Order to appoint a Special Committee to work with the Experts to identify and implement the above-referenced change, and it will consist of the Chief of Police or his designee, the Director of the Department of Personnel and Civil Service or his designee, the Solicitor and Chief Legal Officer

or her designee, the Manager of the Office of Municipal Investigations, and the Class Counsel Working Group. The Special Committee will be led by the Director of Personnel. By Executive Order the Mayor shall also appoint an Advisory Committee to the Special Committee. The Advisory Committee shall be led by the City's Solicitor and Chief Legal Officer and shall consist of eight additional members with relevant experience with either best policing practices or community impact. The Advisory Committee shall also include the Class Counsel Working Group.

36. In consultation with the Experts and the Class Counsel Working Group, the City shall work to reduce or eliminate the Alleged Discriminatory Practices and any Adverse Impact resulting therefrom, and to make necessary changes and/or improvements to any Practices which are found to be insufficient, by following and implementing the eight steps recommended in the Hough Overview, and are summarized as follows:

  a. The City shall update the job analysis, including but not limited to, incorporating integrity, dependability and cultural competence as job requirements ("Step 1");

  b. The City shall develop a construct-oriented measurement plan for the entire Selection Process that ensures all knowledge, skills, abilities and other characteristics ("KSAO's") important to performance as an Entry-Level Police Officer are included, and those that are unimportant are avoided ("Step 2");

  c. The City shall review all existing Selection Devices, individually and in combination, and the Selection Process as a whole, to identify possible causes of Adverse Impact on African-American applicants ("Step 3");

  d. The City shall alter current or develop new Selection Devices designed to remedy Adverse Impact on African-American applicants ("Step 4");

  e. The City shall revise the rating process, including but not limited to developing rating scales that specify standards and guidelines to ensure a structured, objective, and systematic evaluation that is reliable and valid, notably for the Oral Boards, background investigation and Chief's Roundtable stages of the Selection Process, designed to remedy Adverse

    Impact on African-American applicants ("Step 5");

  f. The City shall conduct validity studies for all Selection Devices contained in the Selection Process ("Step 6");

  g. The City shall improve applicant preparation materials and classes ("Step 7"); and

  h. The City shall design and begin conducting continuous and ongoing validation and monitoring of the revised Selection System ("Step 8").

37. In the event the Experts recommend a course of action that differs from the Hough Report or the Hough Overview, the Parties shall revisit that particular point and attempt to reach agreement. If a resolution cannot be achieved, Judge Lenihan shall have final authority to make a decision on this point.

38. The City, in consultation with the Experts, has already made preliminary changes to the Selection Process. These included, but were not limited to, elimination of the rule-of-three and three-strikes requirements for the Chief's Roundtable, and providing a right to appeal adverse decisions by the Chief's Roundtable to the City's Civil Service Commission.

39. In the Fall of 2014, after reviewing the Hough Report and Class Counsel's analysis of applicant files between 2009 and 2014, and determining that there existed a strong basis in evidence that might support a conclusion that the former hiring process discriminated against African-American applicants under Title VII, the Parties agreed to adopt interim relief that allowed certain Class Members to be considered for inclusion into a new class of Entry-Level Police Officers to begin in the first nine months of 2015. Judge Lenihan, acting as mediator, was apprised of and approved the proposed interim relief, and this Court finally approves that relief.

40. All interim and/or preliminary changes made to the Selection Process are subject

to reconsideration and revision by the Parties and Experts during the comprehensive review of the entire Selection Process to be implemented under the Settlement Agreement.

41. Named Plaintiffs and Class Members who previously made it to the background-investigation stage, the Chief's Roundtable, or beyond, but were not selected for a police officer position, were eligible to apply for the recruit class with selection beginning in Spring 2015. They shall receive the ranking they received previously on their respective civil service tests. Neither Class Members' decision to re-apply to become Entry-Level Police Officers in 2014, 2015 or thereafter, or the City's decision to hire or not hire them, affects Class Members' entitlement to damages or their Monetary Relief Amount, as established by the Plan of Allocation.

42. The Experts are obligated and authorized to share their independent professional judgment about how best to reform the Selection Process with the Class Counsel Working Group, and the Class Counsel Working Group is entitled to share information that it has collected or will collect about the City's Selection Devices with the Experts. The Class Counsel Working Group shall be involved in all important decision-making involving changes to the Selection Process and/or monitoring of the revised Selection Process as required by this Settlement Agreement. Among other things, City the Class Counsel Working Group has a right to participate in any telephone calls or to attend any meetings or discussion with experts involving significant changes to the design, implementation and operations of; and/or revisions to the Selection Process. City shall provide the Class Counsel Working Group with reasonable advance notice of all such calls and meetings. Class Counsel Working Group may contact the Experts directly so long as the City is simultaneously contacted and participates in the discussion.

43. Any substantial disagreements between the Parties regarding: the design, implementation and operation of, or revision to the Selection Process; a course of action that differs from the Hough Report or the Hough Overview; or work the Experts have estimated is required to satisfy the terms in Section D of the Settlement Agreement on the Effective Date will be mediated by the Mediator. In the event of such mediation, the Mediator shall consider the position taken by the Experts, and may require them to testify or submit a written report, in rendering a decision. The City shall pay any fees incurred by the Experts in this process, unless the Mediator concludes that the Class Counsel Working Group frivolously brought this disagreement before her; in that case, the Mediator may order that expert fees be paid by Class Counsel. The parties have a right to appeal the Mediator's decision to this Court and to the Third Circuit Court of Appeals.

44. On an ongoing and timely basis, the City shall provide reports to Class Counsel setting forth statistical and demographic data on applicants participating in any new Selection Process that is underway, any new Civil Service testing to produce a new certified list of applicants, and any new recruit class for hire, including but not limited to the demographics of applicants at each stage of the Selection Process and description of who has advanced at each stage of this Process.

45. In order to ensure compliance with this Settlement Agreement and that improvements are working, the Class Counsel Working Group may request to review the City's files of applicants for the position of Entry-Level Police Officer, subject to the Confidentiality Agreement previously entered in this case. If the City refuses to honor the file request, Class Counsel may petition Judge Lenihan to order access to the files for purposes of such review.

46. The term of this Settlement Agreement is 36 months from the Execution Date,

unless Class Counsel successfully petitions this Court to extend this period for good cause shown, or the City successfully petitions the Court to reduce this period for completion of required tasks and good cause shown.

It is SO ORDERED this 17th day of November, 2015.

*DS Cercone*

David Stewart Cercone
United States District Judge

cc:  Counsel of Record
     (via CM/ECF Electronic Mail)